OCTOBER AND NOVEMBER TERM, 1881, No. 190.

# Allegheny Valley Railroad Company *versus* Steele.

1. In an action to recover damages for refusing, on the part of the defendant, to take railroad ties tendered for delivery under a contract to furnish oak ties, there was evidence that the ties so tendered did not correspond with the specifications of the contract. Defendant asked the Court to charge, that if the jury believed the plaintiff had been delivering, and attempting to deliver, inferior ties of a different kind from those specified, and that defendant in refusing to take ties had reference to such inferior ties, plaintiff could not recover even if the words of refusal might bear a broader construction. *Held*, that the point ought to have been affirmed.

2. The resident engineer of the defendant corporation, one of whose duties was the inspection of ties, telegraphed to the plaintiff: "No more ties from you will be received from O. C. & A. R. here," and wrote : "As your contract for ties has not been approved, you had best stop furnishing. Any hemlock ties we may receive from you will be held subject to your order." Plaintiff had another contract with defendant to furnish hemlock ties, and it was a fact in dispute as to which of these contracts the communications referred. The authority of the resident engineer to rescind the contract was denied. Defendant asked the Court to charge, that any act of the resident engineer, whereby he should attempt to rescind or revoke a contract made by the superintendent, would not bind the defendant unless such act were done by authority of or ratified by the superintendent or other superior officer. *Held*, that it should have been affirmed.

3. Plaintiff asked the Court to charge, that if, before the expiration of the time for delivery, the defendant notified plaintiff that they would not receive

[Allegheny Valley Railroad Company v. Steele.]

any more ties under said contract, and refused to do so, such notice and refusal was a breach of the contract on the part of defendant. *Held*, that inasmuch as the point asked for binding instructions upon the mere fact of refusal without reference to the other facts of the case, it was error to affirm it.

4. The Court charged the jury, that if this telegram and letter were sent by the resident engineer, that would amount to a breach of the contract if they believed it. *Held*, to be gross error.

5. *Semble*, that in case of a breach of the contract the proper measure of damages would have been the difference between the price agreed to be paid and the cost of the article to the plaintiff.

ERROR to the Court of Common Pleas of *Venango County.*

Assumpsit by B. C. Steele against the Allegheny Valley Railroad Company to recover damages for the alleged refusal of the defendant company to receive certain cross-ties under a contract between the parties.

Plaintiff and defendant entered into the following agreement:

"PITTSBURGH, April 8th, 1875.

" Memorandum of agreement between B. C. Steele and Allegheny Valley Railroad Company. Said Steele agrees to deliver in cars at Oil City, or at grade on line of said, eight thousand (8000) or ten thousand cross-ties before September 1st, 1875 ; said ties to be white oak or chestnut oak, and to be made of young thrifty timber, hewn on two sides, and cut square at the ends. (No split ties will be received.) The ties will average nine inches across the face. (No ties with less than seven inches face measure will be taken.) They will measure eight feet six inches (8 6) long, and seven inches thick.

" In consideration said railroad company agree to pay fifty (50) cents each for all ties delivered as aforesaid.

"B. C. STEELE.
"J. J. LAWRENCE,
"General Superintendent.

" Witness:
"J. BLACKSTONE."

Upon the trial in the Court below, before McDERMITT, P. J., the plaintiff testified that he had been furnishing ties and timber to the defendant for six years before; that he provided timber to complete the contract upon which suit was brought, and that he delivered four or five hundred ties along the line of the road, which the company paid for.

He then called J. J. Lawrence, who testified that he knew S. H. Jackson; that Jackson was the resident engineer of the defendant, and had special charge of the track and bridges; that it was part of his business to inspect ties and the like; that he had charge of the inspection of ties, and that under general instructions he provided materials including ties;

[Allegheny Valley Railroad Company *v.* Steele.]

that his power extended no further than simply to see that the ties corresponded with the contract, and that witness was succeeded as general superintendent by Mr. McCargo.

The plaintiff then testified that he saw Mr. McCargo and wanted him to put these ties in ;. that McCargo could not do it, but said he would give witness the rate, so that he could run them over their road and sell them to some other road about Pittsburgh; that he said witness could not put the ties in, and his agents said witness could not ; that they refused to take them, and that he could have filled the whole contract for twenty-three or four cents a tie.    While the contract was in existence he had another contract from Mr. Jackson for hemlock ties that was in existence.    The reason given for not receiving the ties was that the contract had not been approved.    He had ties at Sandy and at Henry's Bend. Those at Henry's Bend were not at Oil City or on the line of the Allegheny Valley Railroad.    Were not delivered there on cars.    At Henry's Bend were about one thousand.

Counsel for plaintiff then offered in evidence, after identification, the following telegram and letter :

                                    " PITTSBURGH, 19th.
" B. C. STEELE, Titusville :
 ·  " No more ties from you will be received from O. C. & A. R. here.   Letter by express to-night.
                                    "S. H. JACKSON."


                                "PITTSBURGH, June 19th, 1875.
" B. C. STEELE :
    " DEAR SIR : As your contract for ties has not been approved you had best stop furnishing.    Any hemlock ties we may receive from you will be held subject to your order.
                        " Yours truly,
                            "S. H. JACKSON,
                            "Resident Engineer."


The Court admitted the papers, after objection, to which counsel for defendant excepted.

David McCargo, for the defendant, testified that he was general superintendent of the Allegheny Valley Railroad, appointed July 1st, 1875 ; that he did not authorize Mr. Jackson not to receive ties under the contract, and never ratified such action ; that he never revoked or rescinded the ·contract, or authorized any one to do so ; that at the interview with plaintiff he told him that the ties were reported to be inferior and not according to the contract, and that witness would take any ties that were according to the contract.

[Allegheny Valley Railroad Company *v.* Steele.]

Defendant's counsel then offered to prove by the witness the market value of ties during the continuance of this contract, at the place where the ties were to be delivered, with a view to show what would be the legal damage, if any, in case of a violation of the contract.

The offer was rejected, and exception taken. Upon cross-examination the witness testified, that in July, 1875, he was, as receiver, operating the Oil Creek and Allegheny River Railroad. There was a change of business between the two companies. Mr. Ramsey, the man who inspected ties on the Oil Creek Road, was also inspecting ties on the Allegheny River Road.

S. B. Ramsey, for the defendant, testified:

" Steele got on the train. . . . . He spoke to McCargo about taking these ties. McCargo referred him to me there. I said we could not take the ties because they did not come up to the specifications. They were not first-class ties, were red oak, black oak, pin oak, chestnut, not chestnut oak, chestnut and birch. . . . . I do not think there was a tie in the whole lot that had a seven-inch face. . . . . I told Mr. Steele . . . . . that they did not come up to the specifications in any one way. . . . . The ties . . . . . were very inferior . . . . very uneven. . . . . I said they were decayed, not good. . . . . All the white oak I could find were sawed ; they were of no use to us whatever, and I would not take them at any price; they were not fit to go in any railroad. . . . . As the officer in charge of this department, I was ready to have received these ties, under the contract of the price named, if they had complied with the stipulations of the contract."

There were other witnesses for the defendant, who testified that the ties did not come up to the specifications. There was much other testimony, but the above constitute the material portions.

Counsel for plaintiff asked the Court to charge :

1. Under the contract between the defendant railroad company and B. C. Steele, the plaintiff had the right to put in the ties described therein at any time before September 1st, 1875, and if before the expiration of such time the defendant notified the plaintiff that they would not receive any more ties under said contract, and refused to do so, such notice and refusal was a breach of the contract on the part of the defendant.

2. If the jury find, from the evidence, that the plaintiff was able and willing to deliver the number of ties mentioned in the contract in accordance with its terms, and was hindered and prevented from so doing by the defendant, the plaintiff is entitled to recover in this action for the loss of whatever

profit proved, which he would have recovered or which would have accrued to him had he been permitted to carry out the said contract on his part.

3. That the measure of damages in this case is the difference between what it would have cost the plaintiff to have delivered the ties under the contract and the amount agreed to be paid thereon.

The Court affirmed the second point, and answered the first and third as follows:

1. This point is answered in the affirmative, and further, we say, that if this telegram and letter were sent by Mr. Jackson, that would amount to a breach of the contract if you believed it.

3. Affirmed, but any tie which the defendant did accept and pay for you must exclude from your consideration and calculation. A sub-contract between the plaintiff and a third party, if any has been proved, to furnish a portion of the ties, has nothing to do with this case excepting so far as it may tend to show, if it does do so, the cost of furnishing ties.

Counsel for defendant asked the Court to charge, *inter alia*:

2. The words and acts of the parties are to be construed in connection with the circumstances attending the transaction; and if the jury believe plaintiff had been delivering, and attempting to deliver under the contract, railroad ties inferior to and of a different kind from those specified in the contract, and that defendant in refusing to take ties from the plaintiff had reference to such inferior ties, the plaintiff cannot recover even if the words used by the defendant's agent might bear a broader construction.

3. The Court is asked to charge the jury, that any act of S. H. Jackson, whereby he should attempt to rescind or revoke a contract made by the superintendent, would not bind the defendant unless such act were done by authority of, or afterwards ratified by, the superintendent or other superior officer.

The Court answered these points as follows:

2. This point is evidently framed to meet the telegram and letter from S. H. Jackson, the resident engineer of the defendant, to the plaintiff, on or about the 19th of June, 1875, notifying him, in substance, not to deliver any more ties, as the contract had not been approved. There is no evidence tending in the slightest degree to show that the contract inside was subject to the approval of the board of directors of the defendant's company, or of any other officer or officers. If, therefore, you find, from the evidence, that

[Allegheny Valley Railroad Company v. Steele.]

they clothed their resident engineer, as Jackson, with authority to inspect the ties and to accept or reject them, and if he, by telegram or letter, or by both, notified the plaintiff that he had best not furnish any more ties, as the contract had not been approved, he was legally justified in treating such notice as the notice of the company. Thus explained this point is refused.

3. As explained in our answer to the second, the last point read, this point is also refused.

Defendant excepted to the answers to these points.

March 30th, 1881, verdict for the plaintiff for $882.43, upon which judgment was subsequently entered.

Defendant then took a writ of error, assigning as errors the admission in evidence of the telegram and letter, the overruling of defendant's offer as above, and the answers to the points.

*Hancock* and *Glenn* for plaintiff in error.

The answers to the points took away the questions of fact from the jury.

The telegram and letter refer to ties coming from the Oil Creek and Allegheny River Railroad. Plaintiff was furnishing hemlock ties under another contract. These were questions for a jury to determine. The words " you had best stop furnishing," were advice.

Jackson had no authority to rescind the contract: Hough v. Doyle, 4 Rawle, 291 ; Redfield on Railways, vol. ii, p. 114 ; Kerns v. Piper, 4 Watts, 222; Hays v. Lynn, 7 Watts, 524.

The measure of damages was incorrect. Loss of profits must have been stipulated for, and have been in the contemplation of the parties: Adams Express Co. v. Egbert, 136 Penna. St., 360 ; Fessler v. Love, 48 Penna. State, 407.

*Osmer, Dale* and *Freeman* for defendant in error.

Defendant has treated the case as if plaintiff predicated his right to recover on the ground that defendant refused to receive ties at some other point than that designated, and for refusing ties of an inferior quality. Plaintiff bases his right on the sole ground that defendant abrogated the contract *in toto.*

A principal is bound only by the authorized acts of his agent, but this authority may be shown by a written instrument, verbal commission, or by the acts of the principal in holding out the agent to the world as having authority: Bank v. Bank, 16 N. Y., 125 ; Field on Corporations, sec. 201 ; Anderson v. Coonley, 21 Wendell, 279.

The action of Jackson was not disavowed: Kelsey v. Nat.

[Allegheny Valley Railroad Company *v.* Steele.]

Bank of Crawford Co., 69 Penna. State, 426 ; Insurance Co. *v.* Maguire, 51 Ill., 342.

. The rule as to damages was correct, since the ties had no open market value: Lentz *v.* Chateau, 42 Penna St., 435 ; Feigel *v.* Latour, 1 W. N. C., 1335 ; Clark *v.* The Mayor, 4 Comstock, 338.

The opinion of the Court was delivered, November 7th, 1881, by GREEN, J.

This action was brought to recover damages by one who had contracted in writing to deliver railroad ties against the company who had agreed to take them, for refusing to take ties tendered for delivery. The company defended on the ground that the ties offered for delivery did not correspond with the requirements specified in the contract. Considerable testimony was given in support of this defence. Some of the ties had been received and paid for, others had been refused. The defendant, by their second point, asked the Court to instruct the jury that if they believed the plaintiff had been delivering, and attempting to deliver, inferior ties of a different kind from those specified in the contract, and that the defendant in refusing to take ties from the plaintiff had reference to such inferior ties, the plaintiff could not recover on account of such refusal, even if the words of refusal might bear a broader construction. This point ought to have been affirmed. It was based upon a hypothesis which was supported by actual testimony in the cause, and the defendant had a clear right to a definite instruction upon the effect of those facts. But the learned judge of the Court below refused the point. In doing so he added an explanation about another matter, foreign to the essential proposition of the point and overlooking its effect. Neither the telegram nor the letter, sent by Jackson to the plaintiff, certainly and absolutely related to this particular contract. Whether they did or not was a disputed fact in the case. And if they did, and were sent because of the inferior character of the ties, the defendant would or might be authorized to terminate the contract in this or any other mode. Yet the whole effect of the inferior character of the ties, as bearing upon the right of the defendant to terminate the contract on that account, was taken from the jury by the answer to this point. Nor is this defect compensated by proper instructions on the subject in any other portion of the charge. Other matters are spoken of quite foreign to the case, but as to the vital subject nothing further was said.

In their third point the defendant called in question the validity of an act of rescission, by a subordinate officer, of a

contract made by his superior officer without any authority to rescind. The proposition of the point was legally sound, and should have been affirmed without qualification. Yet it was refused with a reference to the explanation made in answer to the second point. That explanation furnishes no proper response to the point, and here, also, there was error.

The answer to the plaintiff's first point was still more erroneous. The point itself utterly ignores the entire defence set up as a justification, and of the rescission of the contract by the defendant, and asked for a binding instruction upon the mere fact of refusal without reference to any other facts in the case. The refusal to take ties under the contract by the defendant, if it was unauthorized by any act of the plaintiff was a breach of contract. But if by his own conduct he had released the defendant from their obligation to take his ties, then their refusal to take them was no breach. With an explanation of this kind the point could have been affirmed. But it was affirmed absolutely, and then the learned judge went still further, much beyond anything contained in the point, and told the jury that if the telegram and letter were sent by Jackson, that would amount to a breach of the contract. In this there was clear and gross error, it was the assumption by the Court of the whole power of the jury over this part of the case. Jackson's authority to rescind was a disputed fact in the case. Without commenting upon the question whether the plaintiff had given evidence to prove such authority, it is enough to say that the defendant gave direct and positive testimony that he had no such power. More than that, it was a disputed matter whether the letter and telegram referred to ties under this particular contract. The plaintiff was at the same time delivering *hemlock* ties to the defendant under another agreement. He testified himself, " while this contract was in existence I had another contract from Mr. Jackson for hemlock ties that was in existence." As the letter contains a reference to hemlock ties, and the telegram mentions no particular kind, and no particular contract, it was a question of *fact* in the case whether the letter and telegram did relate to the contract declared upon in this suit. This question it was the special province of the jury to decide. Still more than this, the letter was not an absolute refusal to take the ties, nor was it an order not to deliver any more. The language is, " You had best stop furnishing." This was scarcely more than advice, and was certainly not a peremptory refusal. If followed up by such a refusal in fact, it might have been regarded as testimony indicative of such a purpose, but all that would be for the jury. In no circum-

[Burgan *v.* Cahoon *et al.*]

stance was it proper for the Court to decide all these matters by a binding instruction to the jury.

As this was an action by the vendor against the vendee for refusing to receive articles sold, we think the answer to the plaintiff's third point as to the measure of damages was correct. In such circumstances the difference between the price agreed to be paid and the cost of the article to the plaintiff would be the proper measure of his damage.

On the fourth, fifth, and sixth assignments the judgment is reversed, and *venire facias de novo* awarded.